# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00099-CV

## In the Interest of E.N.C.

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 210,653-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## CONCURRING AND DISSENTING OPINION

When E.N.C. was born in 2004, Carr voluntarily placed her for adoption, selecting the Dauns as the adoptive parents through a licensed adoption agency. After she changed her mind nine months later and sought return of the child, the Dauns filed this suit in response. In May 2008, this Court abated the appeal for the trial court to make specific findings of fact and conclusions of law. It did so. Among the findings were the following:

5.  Tammie Renae[1] Carr voluntarily placed [E.N.C.] with Kerry Jay and Lisa Daun on August 2, 2004. Although Tammie Renae Carr testified she requested the child to be returned to her in May 2005, the Court finds her testimony to be self-serving and of recent fabrication to posture her position in this litigation. It is not credible, under the evidence, to believe that she requested or insisted on the return of the child at any time prior to May of 2005. Further, Tammie Renae Carr appeared in open court on June 2, 2005, and consented to the Dauns being named managing conservators of [E.N.C.]. At no time prior to the final hearing in this cause did Tammie Renae Carr request a temporary hearing to establish her periods of possession, determine a support obligation, or provide any financial support for the child.

---

[1] Carr's middle name is correctly spelled "Renea."

6. Tammie Renae Carr intended to place the child for adoption, and selected Kerry Jay and Lisa Daun through a licensed adoption agency in Texas. Tammie Renae Carr did not disclose her intent to place the child for adoption to Donald Ray Garner, Jr. until the date of birth of the child. Tammie Renae Carr disclosed the violent nature of her relationship with Donald Ray Garner, Jr. to her counselor at the adoption agency, as well as to the director of the adoption agency, both before and after the birth of the child. Tammie Renae Carr believed that Donald Ray Garner, Jr. was capable of harming the child and/or fleeing with the child if the child were returned to her care. Her later assertions to the contrary are not credible, and are not accepted by the Court.

7. The testimony provided to the court proved that Tammie Renae Carr had failed to protect her other minor child [ ] from family violence, and would fail to protect [E.N.C.] from family violence. Tammie Renae Carr testified that Donald Ray Garner, Jr., was a violent person who had assaulted her and her other minor child in the past on several occasions.

8. Although Tammie Renae Carr testified that she had terminated the relationship with Donald Ray Garner, Jr. in December 2003, the credible evidence showed that Tammie Renae Carr continued to be in an intimate relationship with Donald Ray Garner, Jr. through the final trial of this cause. The continuation of the relationship exposes the child to substantial risk of emotional or physical harm, and Tammie Renae Carr's conscious choice to be untruthful, or less than candid about the continuing relationship, presents an additional risk of emotional or physical harm to the child. The court is persuaded that the credible evidence showed that Tammie Renae Carr had been involved in a series of relationships with violent partners, including the biological father of [E.N.C.].

9. Although there was testimony that Tammie Renae Carr was the victim of violence in her relationships with some of her partners, the credible evidence showed that she was also a participant. The credible evidence showed that she had a violent temper, and that others had been the victim of her violent acts. Further, and equally persuasive, was the evidence that Tammie Renae Carr refused to seek protection for her children in violent situations, and remained with violent partners despite the danger. Credible testimony, from non-party witnesses and experts persuaded the Court that this cycle of violence would continue if Tammie Renae Carr were awarded possession or access to the child.

2

10. The court is persuaded that the credible evidence showed that Tammie Renae Carr's other minor child had been the victim of family violence as a direct result of Tammie Renae Carr's actions. The court is also persuaded that the credible evidence showed Tammie Renae Carr's other minor child had been physically present and a witness to family violence between Tammie Renae Carr and other men on at least two or more occasions. The court accepted, as credible evidence, through the testimony of multiple family members of Tammie Renae Carr, that Tammie Renae Carr had a temper, was an active participant in incidents of family violence, and was not willing, or capable, of avoiding Donald Ray Garner, Jr.

* * *

12. The credible evidence provided to the court proved that Tammie Renae Carr was emotionally, and physically incapable of caring for the child. To the contrary, the credible evidence showed that Tammie Renae Carr would place the child at substantial risk for emotional or physical harm.

* * *

15. The Court diligently observed the witnesses in Court, and carefully considered the written record of their statements prior to testifying. In particular, Tammie Renae Carr was an untrustworthy witness. Differences between her prior statements and her testimony were unexplained, and glaringly inconsistent with her own prior statements and actions, and glaringly inconsistent with the testimony of disinterested or non-party witnesses. Her testimony seemed, on the whole, calculated to support her position in the litigation and with little regard for the truth.

Among the conclusions of law were the following:

11. Tammie Renae Carr should not be allowed access to [E.N.C.] because Tammie Renae Carr has a history or pattern of committing family violence during the two years preceding the date of the filing of this suit or during the pendency of this suit.

* * *

16. It was appropriate to include in the final rendition of judgment, provisions requiring Tammie Renae Carr to attend and complete a psychological

3

evaluation before additional periods of visitation should be granted beyond the two specified periods contained in the court order.

\* \* \*

18. The Court finds that the award of two supervised periods of possession between Tammie Renae Carr and the child for specified hours on two certain dates placed the minimal restrictions on Tammie Renae Carr's possession of the child consistent with protecting the child's physical health, emotional welfare, and overall best interest. The court further finds that the psychological evaluation ordered by the court, was with a reliable expert whom the court could look to for important information, and had the right to include in the final order of the court.

Based upon an extensive record that informed the trial court's task, the standard of review, and the thorough findings of fact and conclusions of law—particularly the findings regarding credibility and risks to the child—I would affirm the trial court's judgment in all respects. The trial court did not foreclose all opportunity for further visitation of the child by Carr, but conditioned it on "minimal restrictions on Tammie Renae Carr's possession of the child consistent with protecting the child's physical health, emotional welfare, and overall best interest." I therefore concur in the judgment to the extent the majority affirms the judgment and dissent to the majority's conclusion that the trial court erred in limiting Carr's access and possession.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Filed: March 13, 2009

4